01
02
03
04
05
06
07
08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09  LAWRENCE E. KELLY,                    )
                                          )   Case No. C06-1152-RSM-JPD
10              Plaintiff,                 )
                                          )
11       v.                               )
                                          )
12                                        )   REPORT AND RECOMMENDATION
    MICHAEL J. ASTRUE, Commissioner,      )
13  Social Security Administration,       )
                                          )
14              Defendant.                )
    _____ )
15

16          Plaintiff Lawrence E. Kelly appeals the final decision of the Commissioner of the

17  Social Security Administration ("Commissioner") which denied his application for Disability

18  Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*,

19  after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

20  the Court recommends that the Commissioner's decision be REVERSED and REMANDED

21  for further proceedings not inconsistent with this Report and Recommendation.

22                          I.  FACTS AND PROCEDURAL HISTORY

23          Plaintiff is a 56-year-old man whose education includes earning his diploma from

24  high-school by passing the GED tests, and one year as an electrical apprentice.

25  Administrative Record ("AR") at 98.  His past work experience includes employment as a

26  portable toilet service driver, mechanic, gas station attendant, and electrical apprentice.

REPORT AND RECOMMENDATION
PAGE - 1

Plaintiff was last gainfully employed in March of 1996.  AR at 98.

Plaintiff served in the United States Army and was stationed in Vietnam.  While on duty, he was severely injured in a bomb blast involving the North Vietnamese Army as his unit was being attacked.  He recalls being thrown hundreds of feet.  AR at 469.  He was also caught up in a race riot in either Vietnam or when he returned to Fort Ord, and was run over by a vehicle during this riot.  AR at 750.

On April 10, 1996, plaintiff filed an application for DIB, alleging an onset date of March 23, 1996.  AR at  89.  Plaintiff asserts that he is disabled due to neck and back conditions, depression and post-traumatic stress disorder ("PTSD").  AR at 94.  On April 17, 1998, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform specific jobs existing in significant numbers in the national economy.  AR at 17.

Plaintiff requested administrative review of the ALJ's decision, which the Appeals Council granted, and the matter was remanded for further consideration.  A subsequent hearing took place on February 17, 2000, during which the plaintiff and a Vocational Expert ("VE") testified.  On September 5, 2000, the ALJ found the plaintiff was not disabled.  AR at 17, 18.  No appeals were taken.  The plaintiff then filed the current application on June 30, 2006, alleging disability since March 23, 1996.  AR at 17.  The ALJ did not reopen the earlier proceeding but held that regulatory changes that had occurred since the original decision precluded the application of *res judicata*, and concluded that the issue of disability to the asserted onset date had to be considered.  AR at 18.

The ALJ conducted a hearing on February 14, 2006.  AR at 1010-22.  The plaintiff was the only witness.  On April 17, 2006, the ALJ issued a decision finding the plaintiff not disabled.  AR at 17-26.  The Appeals Council denied plaintiff's request for review.  AR at 9.  Consequently, the ALJ's April 17, 2006 decision serves as the Commissioner's final decision for purposes of judicial review.  42 U.S.C. § 405(g).  On August 15, 2006, plaintiff

REPORT AND RECOMMENDATION
PAGE - 2

01  timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

02                                  II.   JURISDICTION

03          Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

04  405(g) and 1383(c)(3).

05                              III.   STANDARD OF REVIEW

06          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial

07  of social security benefits when the ALJ's findings are based on legal error or not supported

08  by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214

09  (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance,

10  and is such relevant evidence as a reasonable mind might accept as adequate to support a

11  conclusion.  *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881

12  F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving

13  conflicts in medical testimony, and resolving any other ambiguities that might exist.

14  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to

15  examine the record as a whole, it may neither reweigh the evidence nor substitute its

16  judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

17  2002).  When the evidence is susceptible to more than one rational interpretation, it is the

18  Commissioner's conclusion that must be upheld.  *Id.*

19          The Court may direct an award of benefits where "the record has been fully

20  developed and further administrative proceedings would serve no useful purpose."  *McCartey*

21  *v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273,

22  1292 (9th Cir. 1996)).  The Court may find that this occurs when:

23              (1)  the ALJ has failed to provide legally sufficient reasons for rejecting the
                claimant's evidence; (2)  there are no outstanding issues that must be resolved
24              before a determination of disability can be made; and (3)  it is clear from the
                record that the ALJ would be required to find the claimant disabled if he
25              considered the claimant's evidence.

26  *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

REPORT AND RECOMMENDATION
PAGE - 3

01  erroneously rejected evidence may be credited when all three elements are met).

02                          IV.   EVALUATING DISABILITY

03          As the claimant, Mr. Kelly bears the burden of proving that he is disabled within the

04  meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

05  Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage

06  in any substantial gainful activity" due to a physical or mental impairment which has lasted,

07  or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

08  423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments

09  are of such severity that he is unable to do his previous work, and cannot, considering his

10  age, education, and work experience, engage in any other substantial gainful activity existing

11  in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v.*

12  *Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

13          The Commissioner has established a five step sequential evaluation process for

14  determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

15  404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.

16  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled

17  at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

18          Step one asks whether the claimant is presently engaged in "substantial gainful

19  activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If

20  he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish

21  that he has one or more medically severe impairments, or combination of impairments, that

22  limit his physical or mental ability to do basic work activities.  If the claimant does not have

23  such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant

24  does have a severe impairment, the Commissioner moves to step three to determine whether

25

26          [1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant
     physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

01   the impairment meets or equals any of the listed impairments described in the regulations.  20

02   C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of

03   the listings for the required twelve-month duration requirement is disabled.  *Id.*

04          When the claimant's impairment neither meets nor equals one of the impairments

05   listed in the regulations, the Commissioner must proceed to step four and evaluate the

06   claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  At

07   this step, the Commissioner evaluates the physical and mental demands of the claimant's past

08   relevant work to determine whether he can still perform that work.  20 C.F.R. §§

09   404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not

10   disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show

11   that the claimant can perform other work that exists in significant numbers in the national

12   economy, taking into consideration the claimant's RFC, age, education, and work experience.

13   20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the

14   Commissioner finds the claimant is unable to perform other work, then the claimant is found

15   disabled and benefits may be awarded.

16                              V.  DECISION BELOW

17          On April 17, 2006, the ALJ issued a decision finding:

18       1.     The claimant's prior application is not reopened for the reasons
                discussed in the body of this decision.
19

20       2.     The claimant met the disability insured status requirements of the Act
                only through December 31, 2001.

21       3.     The claimant did not engage in substantial gainful activity during the
                relevant time period.
22

23       4.     The claimant is status-post L4-S1 fusion; he also has L1-2
                degenerative disc disease with arthritis; C5-6 degenerative disc disease.
24              He had mild depression and PTSD which were not severe prior to his
                date last insured.  His impairments did not meet or equal the criteria of
                any impairment listed in Appendix No. 1.
25

26       5.     The claimant's statements concerning his impairments and limitations
                are not entirely credible.

REPORT AND RECOMMENDATION
PAGE - 5

6.    During the time relevant to this matter, the claimant retained the residual functional capacity to lift and carry up to 20 pounds frequently or occasionally; he could sit or stand 6 hours in an 8-hour workday, at 2-hour increments.  He was limited to less than frequent climbing, stooping, crouching, kneeling and crawling.  He needed to avoid exposure to extreme temperatures, moving machinery, vibrations, and high-stress work environments.

7.    The claimant's impairments and limitations precluded his past relevant work during the relevant time.

8.    The claimant was born on October 15, 1950, and he has at least a high school education.

9.    If the claimant could perform a full range of light work, 20 C.F.R. §404.1569 and rule 202.14 of Appendix 2 would direct a conclusion that he was not disabled.

10.   Although the claimant was unable to perform a full range of light work on and before the date that he was last insured, he was capable of other work that exists in substantial numbers, such as cashier and ticket seller.  Thus, he was not disabled within a framework of the above-cited rule.

11.   The claimant was not under a disability as defined in the Social Security Act, at any time on and before the date that he was last insured.

AR at 25-26.

## VI.  ISSUES ON APPEAL

Although the plaintiff cites many possible errors, the principal issues on appeal are:

1.    Did the ALJ err in finding that the plaintiff's mental impairments were not severe?

2.    Did the ALJ err in his assessment of the plaintiff's RFC?

3.    Did the ALJ err by not calling a Vocational Expert at step five of the Disability Sequential Analysis?

## VII.  DISCUSSION

A.    <u>The ALJ's Finding at Step Two that Plaintiff's Mental Impairments Were Not Severe Is Not Supported by Substantial Evidence</u>

The ALJ found that the plaintiff's PTSD and depression were not severe prior to December 31, 2001, his date last insured ("DLI").  AR at 18, 19.  Plaintiff contends the

REPORT AND RECOMMENDATION
PAGE - 6

01 ALJ's failure to find severe mental impairments at step two determination is not supported by

02 substantial evidence, and argues that the medical evidence shows he suffers from severe

03 mental impairments, i.e., depression, PTSD, and has since prior to his DLI.  Dkt. No. 13 at

04 15.

05          At step two, a claimant must make a threshold showing that his medically-determinable

06 impairments significantly limit his ability to perform basic work activities.  *See Bowen v.*

07 *Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. § 416.920(c).  Basic work activities refer to

08 "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  "An

09 impairment or combination of impairments can be found 'not severe' only if the evidence

10 establishes a slight abnormality that has no more than a minimal effect on an individual's ability

11 to work."  *Smolen*, 80 F.3d at 1290 (internal quotation omitted).  The step-two inquiry has

12 been characterized as "a de minimis screening device to dispose of groundless claims."  *Id.*  An

13 ALJ is also required to consider the "combined effect" of an individual's impairments in

14 considering severity.  *Id.*

15          In this case, the plaintiff was placed in a psychiatric hospital twice in 1982 for serious

16 depression.  He was diagnosed with chronic PTSD in 1984 of moderate severity and a

17 dysthymic disorder.  AR at 561.  In 1996, he sought counseling at a Veterans Administration

18 ("VA") Center, because of a reoccurrence of PTSD and depression.  AR at 165, 756.

19 Although he discontinued treatment because he thought he was improving, in October 1997

20 he was admitted to the Veteran's Administration Medical Center.  AR at 456-560.  His

21 diagnosis was that of a long history of untreated depression.  Although he showed some

22 improvement, the medical records indicated that the plaintiff's "general responsiveness is

23 significantly diminished" and that he continued to experience "chronic depression" and had

24 "withdrawn from the work force."  AR at 750.  He then began to receive disability payments

25 from the VA "at the 100% rate due to grant of individual unemployability" resulting from his

26 PTSD, effective September 1, 1997.  AR at 66.

REPORT AND RECOMMENDATION
PAGE - 7

01   The Ninth Circuit has held that because the Social Security and Veterans Affairs

02   programs are so similar in structure, purpose, and evaluation methods, an ALJ is obligated to

03   consider the VA's finding of disability when conducting his disability analysis. *McCartey*, 298

04   F.3d at 1076.  Because the two programs are not identical, however, a VA's disability rating

05   does not *require* the Social Security Administration to reach the same determination.  *Id.*

06   Rather, the ALJ is required to give "great weight" to a VA determination of disability and may

07   only discount such evidence if he provides "persuasive, specific, valid reasons for doing so that

08   are supported by the record."  *Id.*

09   The ALJ acknowledged that the law required him to give the VA disability

10   determination great weight, but he gave it none, stating:

11      In this case, however, the VA percentage granted "individual unemployability"
        even though there was no finding that he had a "total occupational and social
12      impairment" (exhibit B-1D:1, 3).  Further, the medical record does not disclose
        any findings that would support the VA conclusions.  The claimant was
13      hospitalized for psychiatric reasons in 1997, although he indicated that his
        depressions was only a 2-3/10 (exhibit B-11F:28).[2]  He said that he was
14      generally pretty happy (exhibit 11F:8).  Past records show that he felt fine and
        he indicated good cheer; his GAF's were 55-60, and he had no significant
15      physical or mental problems (exhibit B-11F:15-18).  These reports do not
        suggest a significant mental problem.  In September 1998 his GAF was 50-55,
16      inconsistent with disability.

17      For these reasons, the predicate for the VA determination of disability is not
        apparent.  This issue was also considered in the prior decision (exhibit 9B:8).
18      The claimant's VA pension is not found dispositive of this matter.

19   AR at 22.

20   The ALJ's decision is not without error for two reasons.  First, the issue at step two of

21   the sequential disability evaluation process is not whether the mental impairment is disabling

22   per se, or, as the ALJ described it, "dispositive."  Rather, the inquiry at step two is whether

23   an impairment is severe.  This, as noted above, means simply more than "de minimis."  The

24   ALJ appears to have conflated the step two analysis with the ultimate determination of

25

26   _____

   [2]   At other times, the plaintiff reported his depression at 10/10 and 5/10 and 6/10.  AR at
   509,   486.

REPORT AND RECOMMENDATION
PAGE - 8

01 disability.

02       The second reason that the ALJ erred in this regard is that there is substantial

03 evidence in the record that supports the VA's determination.  The plaintiff presented

04 evidence of persistent PTSD and chronic depression, and with GAF assessments in the range

05 of 51 to 60.[3]  Plaintiff also showed a significant diminishment of "general responsiveness,"

06 flat affect, difficulty "concentrating and focusing on tasks," and recurrent intrusive

07 flashbacks.  AR at 750, 69, 561-68.  Moreover, he was diagnosed with being moderately

08 limited in his ability to maintain impersonal relationships and dealing with the public,

09 ongoing difficulties with anger and irratability.  AR at 467, 755, 747, 733-50, 561-68.

10       The VA examiner concluded:

11     It does appear that it would be extremely difficult for the veteran to gain and
12     sustain competitive ongoing employment at the current time due to the level
    of severity of his post-traumatic stress disorder difficulties and also his
13     dysthymic disorder which is clearly associated with his post-traumatic stress
    disorder problems.

14 AR at 70.

15       The VA found that the plaintiff was disabled with individual unemployability.  While

16 this is not dispositive of the penultimate question of disability, the law requires that this

17 determination be given great weight.  The ALJ gave it none when he held that the plaintiff's

18 mental impairments were on the order of a "slight abnormality" or that they had not more

19 than a de minimis impact on the plaintiff.  The ALJ erred at step two.

20       The plaintiff has urged the Court to remand for an award of benefits.  In light of the

21

22     [3] The GAF is a subjective determination based on a scale of 1 to 100 of "the clinician's
23 judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N,
DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (Text. Rev., 4th ed. 2000).
24 A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, occasional panic
attacks, or "moderate difficulty in social or occupational functioning." Id. at 34.  A GAF score of
25 41-50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school
functioning," such as the lack of friends and/or the inability to keep a job.  Id.  In addition to the
26 reported GAF scores of 51 to 60 that the ALJ cited, the plaintiff also had a GAF assessment of
48.  AR at 738.

01  age of this case, this is understandable.  However, questions remain, and if the Court were to

02  do so, it would be the mirror equivalent of error that the ALJ committed by conflating the

03  inquiry at step two with the final disability determination.  This matter must therefore be

04  remanded back to the Commissioner for further proceedings.

05     B. <u>The Error at Step Two Impacts the Plaintiff's RFC Assessment</u>

06     Because the ALJ failed to consider the plaintiff's mental impairments severe at step

07  two of the disability sequential evaluation process, he failed to assess how the combination of

08  the plaintiff's physical and non-exertional impairments impacted his residual functional

09  capacity.  *Smolen*, 80 F.3d at 1290.  Accordingly, on remand, the ALJ will take into account

10  the plaintiff's physical impairments and his non-exertional limitations and reassess his RFC.

11     C. <u>On Remand, the ALJ Will Call for New VE Testimony</u>

12     After a claimant has demonstrated that he has a severe impairment that prevents him

13  from doing his past relevant work, he has made a prima facie showing of disability.  *Tackett*

14  *v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).  The burden then shifts to the Commissioner at

15  step five to demonstrate that, in light of the claimant's RFC, age, education, and work

16  experience, he can perform other types of work that exist in "significant numbers" in the

17  national economy.  *Id.*; 20 C.F.R. § 404.1520(f).

18     If a plaintiff suffers from significant non-exertional impairments not contemplated by

19  the Medical Vocational Guidelines ("Guidelines"), the ALJ must use the principles in the

20  appropriate sections of the regulations to determine whether Plaintiff is disabled.  SSR 85-15,

21  at *1; *Tackett*, 180 F.3d at 1101-02.  When an ALJ uses the Guidelines in this fashion to

22  evaluate non-exertional limitations not contemplated by the Guidelines, he must call upon a

23  VE.  *Tackett*, 180 F.3d at 1102.  In such a scenario, the ALJ must provide the VE with an

24  accurate and detailed description of the claimant's impairments, as reflected by the medical

25  evidence of record.  *Id.* at 1101.

26     In this case, the ALJ concluded the plaintiff was unable to return to his former work.

REPORT AND RECOMMENDATION
PAGE - 10

01   He then used the VE testimony from a prior hearing to determine that jobs existed that the

02   plaintiff was capable of performing.  This was error for two reasons.  First, the prior

03   testimony of the VE is not available, thereby making judicial review of the appropriateness

04   of the conclusions drawn from that testimony impossible.  Second, because the ALJ did not

05   properly assess the full extent of the plaintiff's impairments, it is not likely that the VE would

06   have had all of the impairments before him when rendering an opinion.  Accordingly, on

07   remand, the ALJ will call a new VE to review a hypothetical that includes all of the

08   plaintiff's physical and non-exertional impairments.

09                                    VIII.   CONCLUSION

10            For the foregoing reasons, the Court recommends that this case be REVERSED and

11   REMANDED to the Commissioner for further proceedings not inconsistent with this Report

12   and Recommendation.  A proposed order accompanies this Report and Recommendation.

13            DATED this 24th day of May, 2007.

15                                                              James P. Donohue

16                                                      _____
                                                        JAMES P. DONOHUE
17                                                      United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 11